

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

**ENTERED**
**02/15/2011**

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| TEKOIL & GAS CORPORATION, | ) | CASE NO. 08-80270-G3-11 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| WILLIAM G. WEST, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ADV. NO. 10-8065 |
| | ) | |
| MARK WESTERN, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>MEMORANDUM OPINION</u>

The court has held a pretrial conference with respect
to the above captioned adversary proceeding, and has considered
"Michael Vosbein's Motion for Leave to File First Amended Answer"
(Docket No. 19), "Michael Vosbein's Motion for Leave to File a
Jury Demand" (Docket No. 20), "Motion to Withdraw the Reference
of Adversary Proceeding Case Number 10-08065 to the United States
District Court for the Southern District of Texas" (Docket No.
22), "Defendants Mark Western and Gerald Goodman's Motion for
Leave to File a Jury Demand" (Docket No. 24), and "Defendants
Mark Western and Gerald Goodman's Motion for Leave to File
Amended Answers" (Docket No. 25).  The court has previously
denied "Defendants Mark Western and Gerald Goodman's Joint Motion
to Consolidate Related Adversary Proceedings" (Docket No. 23).

The court has also, <u>sua sponte</u>, considered (and directed the parties to address at the pretrial conference held on February 1, 2011) the question of the court's subject matter jurisdiction with respect to the instant adversary proceeding.  The following are the Findings of Fact and Conclusions of Law of the court.  A separate conforming Judgment and a Report and Recommendation to the District Court for Withdrawal of Reference will be entered.  To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

Tekoil & Gas Corporation ("Tekoil") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on June 10, 2008.  Tekoil's subsidiary, Tekoil and Gas Gulf Coast, LLC ("Gulf Coast") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on August 29, 2008.  The Tekoil and Gulf Coast (collectively, "Debtors") cases were jointly administered, by order entered on October 1, 2008.

The joint plan proposed by Debtors was confirmed, by order entered on March 24, 2010.  The plan created a creditor trust, and named William G. West as the trustee of the creditor trust (Docket No. 546, Case No. 08-80270-G3-11).

The plan provides, in pertinent part:

1.13.  "Cause(s) of Action" means any and all claims,
actions, proceedings, causes of action, rights, suits,
accounts, controversies, agreements, promises, rights
of action, rights to legal or equitable remedies,
rights to payment and Claims, whether known, unknown,
reduced to judgment, not reduced to judgment,
liquidated, unliquidated, fixed, contingent, matured,
unmatured, disputed, undisputed, secured or unsecured
and whether asserted or assertable directly or
derivatively, in law, equity or otherwise, that a
Debtor and/or an Estate may hold against any Person, or
which could be asserted by a Debtor on behalf of any
Creditor or Creditor representative under the
Bankruptcy Code as a Debtor in Possession (except as
otherwise expressly released or waived pursuant to the
Plan), including but not limited to all Avoidance
Actions and actions under Bankruptcy Code section 510
to subordinate Claims.

* * *

6.03. The Creditor Trust

* * *

(b) Transfer and Vesting of Assets.  On the Effective
Date, (i) $50,000 in Cash, (ii) all Causes of Action
and (iii) all right, title, and interest of J. Aron in
and to the GBE Conditional Payment and any Distribution
arising from or on account of the GBE Conditional
Payment that J. Aron would otherwise be entitled to
receive at any time, and any and all Liens related
thereto, shall be transferred to and vest in the
Creditor Trust. To the extent any Cause of Action is
not transferable by a Debtor to the Creditor Trust
under applicable law, such Debtor shall retain such
Cause of Action and the Creditor Trustee shall be
entitled to prosecute such Cause of Action in the name
of such Debtor for the benefit of the Creditor Trust.
In addition, all property of the Estates, if any,
remaining after (y) the Debtors have paid all Allowed
Administrative Claims, Allowed Priority Tax Claims, and
Allowed Claims in Classes 1-5 and 7 as provided in the
Plan, and (z) Gulf Coast has paid J. Aron all Cash, if
any, that is payable to J. Aron pursuant to Section
5.06 of the Plan shall be promptly paid, delivered

3

and/or transferred to and vest in the Creditor Trust.
All property paid, delivered and/or transferred to the
Creditor Trust at any time shall constitute Trust
Property, free and clear of all Claims, Liens,
interests and encumbrances, and shall thereafter be
administered, liquidated by sale, collection, recovery,
or other disposition and distributed by the Creditor
Trust in accordance with the terms of the Plan and the
Creditor Trust Agreement.

* * *

(f) Creditor Trustee.

* * *

(iii) Powers and Duties.  The Creditor Trustee
shall have the powers and duties set forth in the
Plan and the Creditor Trust Agreement.  The
Creditor Trustee will be a representative of the
Debtors' Estates pursuant to Bankruptcy Code
section 1123(b)(3) and as such will have the power
to prosecute all Causes of Action in the name of
the Creditor Trust or as necessary in the name of
the Debtors.

* * *

6.04. Preservation and Settlement of Causes of Action

(a) Preservation of Causes of Action. In accordance
with Bankruptcy Code section 1123(b)(3), the Creditor
Trust shall retain all of the Causes of Action, a
nonexclusive description of which is set forth in the
Disclosure Statement, and other similar claims,
counterclaims, rights, defenses, setoffs, recoupments,
and actions in law or equity arising under the
Bankruptcy Code or applicable non-bankruptcy law. The
Creditor Trustee and the Creditor Trust may enforce,
sue on, settle or compromise (or decline to any of the
foregoing) any of all of the Causes of Action and other
similar claims, counterclaims, rights, defenses,
setoffs, recoupments, and actions, and may prosecute
and enforce all defenses, counterclaims, and rights
that have been asserted or could be asserted by a
Debtor against or with respect to all Claims asserted
against such Debtor or property of such Debtor's
Estate.

4

The Debtors have not conducted an investigation into
the Causes of Action. Thus, in considering the Plan,
each party in interest should understand that any and
all Causes of Action that may exist against such Person
may be pursued by the Creditor Trustee and/or the
Creditor Trust, regardless of whether, or the manner in
which, such Causes of Action are identified or
described in the Disclosure Statement and/or the
Schedules. The failure of the Debtors to describe or
identify a claim, right, Cause of Action, suit or
proceeding in the Disclosure Statement or the Schedules
shall not constitute a waiver, forfeiture, or release
by the Debtors, their Estates or the Creditor Trust of
such claim, right, Cause of Action, suit or proceeding.
Such Causes of Action shall survive entry of the
Confirmation Order for the benefit of the Debtors and
their Estates, and upon the Effective Date, for the
benefit of the Creditor Trust.

* * *

9.02. Vesting of Assets

On the Effective Date, the property and assets of each
Debtor's Estate shall vest in the respective Debtor or
the Creditor Trust, as provided in Section 6.03(b) of
the Plan, free and clear of all Claims and Interests,
but subject to the obligations of the Debtors and the
Creditor Trust as set forth in this Plan and the
Confirmation Order.  Commencing on the Effective Date,
the Debtors may deal with their property and the
Creditor Trust may deal with the Trust Property without
any supervision by, or permission from, the Bankruptcy
Court or the Office of the United States Trustee, and
free of any restriction imposed by the Bankruptcy Code
or by the Bankruptcy Court during the Bankruptcy Cases.

* * *

12.01. Jurisdiction

Until the Bankruptcy Cases are closed, the Bankruptcy
Court will retain the jurisdiction as is legally
permissible under applicable law, including under
Bankruptcy Code sections 105(a) and 1142, including
that which is necessary to ensure that the purpose and
intent of the Plan are carried out and to hear and
determine all objections thereto that could have been

brought before the entry of the Confirmation Order.
The Bankruptcy Court will retain jurisdiction to hear
and determine all Claims against and Interests in the
Debtors and to enforce all Causes of Action over which
the Bankruptcy Court otherwise has jurisdiction.
Nothing contained in the Plan will prevent the Debtors,
the Creditor Trust or the Creditor Trustee from taking
any action as may be necessary to enforce any Cause of
Action that may exist on behalf of the Debtors and that
may not have been enforced or prosecuted by the
Debtors.

* * *

12.03. Determination of Disputes

The Bankruptcy Court will retain jurisdiction after the
Confirmation Date to determine (a) all questions and
disputes regarding title to the assets of the Estate,
(b) disputes concerning the allowance of Claims and
Interests, and (c) all Causes of Action, controversies,
disputes, or conflicts, whether or not subject to any
pending action, as of the Confirmation Date, for the
Debtors, the Creditor Trust or the Creditor Trustee to
recover assets pursuant to the provisions of the
Bankruptcy Code.

(Docket No. 546, Case No. 08-80270-G3-11).

The order confirming the plan provides in pertinent

part:  "The Court shall retain jurisdiction to the extent

provided in Article XII; such jurisdiction shall be concurrent to

the extent permitted under applicable law."  (Docket No. 571,

Case No. 08-80270-G3-11).

On March 31, 2010, Debtors filed a notice indicating

that the effective date of the plan occurred, and that the plan

was substantially consummated, on March 31, 2010.  (Docket No.

574, Case No. 08-80270-G3-11).

In Debtors' disclosure statement, they estimated assets

6

for Tekoil totaling approximately $16 million (including $15.2
million for its interest in Gulf Coast).   Debtors estimated
assets for Gulf Coast totaling approximately $14 million.
(Docket No. 547, Case No. 08-80270-G3-11).

On August 28, 2010, West, as trustee of the creditor
trust ("Plaintiff") filed the complaint in the instant adversary
proceeding.  In the complaint, Plaintiff (represented by counsel
who represented the Creditors' Committee pre-confirmation) seeks
damages in excess of $30 million, from Debtors' former
shareholders and directors Richard Creitzman, Michael Vosbein,
and Frank Clear, and former shareholders, directors, and officers
Gerald Goodman and Mark Western, on a theory of prepetition
breach of fiduciary duty.  Plaintiff also seeks exemplary
damages, imposition of a constructive trust, an award of attorney
fees and costs, and prejudgment and postjudgment interest.[1]

On September 30, 2010, Western and Goodman, pro se,
filed an answer to the complaint in the instant adversary
proceeding.  (Docket No. 11). In their answer, Western and
Goodman address the substance of the complaint in the instant
adversary proceeding.  Western and Goodman each signed the answer
at Docket No. 11.

On October 5, 2010, Vosbein, pro se, filed an answer to

---

[1]Creitzman and Clear have not appeared in the instant
adversary proceeding.

7

the complaint in the instant adversary proceeding.  (Docket No. 688, Case No. 08-80270-G3-11).[2]  In his answer, Vosbein addresses the substance of the complaint in the instant adversary proceeding.  Vosbein signed the answer at Docket No. 688 in Case No. 08-80270-G3-11.

Neither the answer filed by Western and Goodman nor the answer filed by Vosbein contained a jury demand.[3]

The court held an initial status conference in the above captioned adversary proceeding on November 16, 2010.  At that status hearing, Western and Goodman were represented by counsel, and Vosbein was represented by separate counsel.  After the initial status conference, Defendants filed the instant motions.

In the instant motions, Defendants seek leave to file amended answers, because they are now represented by counsel.

---

[2]Vosbein filed his answer to the instant adversary proceeding in the main case by mistake.  He has admitted that the answer mistakenly filed in the main case was responsive to the complaint in the instant adversary proceeding.  (Docket No. 19, at p. 2, FN1).

[3]FN2 Neither Creitzman nor Clear has appeared in the instant adversary proceeding.  Although Vosbein is now represented by counsel other than counsel who represents Western and Goodman, the relief they request in the instant motions is the same. thus, Western, Goodman, and Vosbein are identified as "Defendants" for the remainder of this memorandum opinion.  The term does not refer to Creitzman or Clear, as used in this memorandum opinion.

Each of the amended answers contains, in addition to responses to
the factual allegations in the complaint in the instant adversary
proceeding, an assertion of affirmative defenses, and a demand
for a trial by jury on all issues in the complaint so triable as
of right.  Defendants also seek leave to assert their jury
demands.  Western and Goodman also seek withdrawal of the
reference to the District Court, in light of their jury demands.

At the hearing on the instant motion, counsel for
Western and Goodman argued that Western and Goodman have not
consented to the entry of final orders by the bankruptcy court.

<u>Conclusions of Law</u>

As a preliminary matter, the court must examine its own
subject matter jurisdiction of the instant adversary proceeding.
Under 28 U.S.C. § 1334(b), the district court has "original but
not exclusive jurisdiction of all civil proceedings arising under
title 11, or arising in or related to cases under title 11."

A proceeding is "related to" a bankruptcy if the
outcome of that proceeding could conceivably have any effect on
the estate being administered in bankruptcy.  <u>Wood v. Wood</u>, 825
F.2d 90 (5th Cir. 1987).

Under 28 U.S.C. § 157(b)(1), a bankruptcy judge may
hear and determine core proceedings arising under title 11, or
arising in a case under title 11, referred to the bankruptcy
court under 28 U.S.C. § 157(a).

Under 28 U.S.C. § 157(c):

(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.  In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(c).

Under 28 U.S.C. § 157(b)(2):

 Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of continent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmation of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort and wrongful death claims; and

(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

28 U.S.C. § 157(b)(2).

The United States District Court for the Southern District of Texas has referred to the bankruptcy judges of the court, with exceptions not pertinent to the instant adversary proceeding, "[b]ankruptcy cases and proceedings arising under Title 11 or arising in or related to a case under Title 11 of the United States Code." The court directed that "[i]n civil

11

actions, bankruptcy cases and proceedings referred to them, the
bankruptcy judges may exercise the full authority allowed them by
law." Gen. Ord. 2005-6, United States District Court, Southern
District of Texas, entered March 10, 2005.

In In re Craig's Stores of Texas, Inc., 266 F.3d 388
(5th Cir. 2001), the Fifth Circuit held:

> After a debtor's reorganization plan has been
> confirmed, the debtor's estate, and thus bankruptcy
> jurisdiction, ceases to exist, other than for matters
> pertaining to the implementation or execution of the
> plan.

Craig's Stores, 266 F.3d, at 390.

The Fifth Circuit has clarified its holding in Craig's
Stores, in In re U.S. Brass Corp., 301 F.3d 296 (5th Cir. 2002);
In re Biloxi Casino Belle Inc., 368 F.3d 491 (5th Cir. 2004); In
re Seven Seas Petroleum, Inc., 522 F.3d 575 (5th Cir. 2008); and
Newby v. Enron Corp. (In re Enron Corp. Securities, Derivative &
ERISA Litigation), 535 F.3d 325 (5th Cir. 2008). In U.S. Brass,
the plan provided that two of the debtor's suppliers, which
asserted claims against the debtor's insurers, would institute
litigation in a court of competent jurisdiction. Subsequent to
confirmation, the suppliers sought approval of a settlement under
which their claims against the insurers would be subjected to
binding arbitration. The Fifth Circuit held that the bankruptcy
court had jurisdiction:

> Bankruptcy law will ultimately determine this dispute,
> and the outcome could affect the parties'

12

> postconfirmation rights and responsibilities.
> Furthermore, this proceeding will certainly impact
> compliance with or completion of the reorganization
> plan.   Consequently, the Appellants' motion pertains to
> the plan's implementation or execution and therefore
> satisfies the Craig's Stores test for post-confirmation
> jurisdiction.

U.S. Brass, 301 F.3d., at 305.

In Biloxi Casino Belle, the Fifth Circuit examined its jurisdiction over a dispute between the debtor's indenture trustee (as assignee of the parent debtor's security interest in its operating subsidiary debtor's assets) and the debtor's title insurance company.  The Fifth Circuit held that bankruptcy court had jurisdiction, noting that a contractor which asserted a lien in the underlying assets had settled its lien priority litigation with the indenture trustee, in exchange for the indenture trustee's assignment of any recovery against the title insurance company to a liquidating trust created under the plan.

In Seven Seas, the Fifth Circuit extended the holding in U.S. Brass, holding that bankruptcy "jurisdiction extends to matters that impact compliance with or completion of the reorganization plan.  The district court was thus correct in assuming that bankruptcy jurisdiction would exist over any claims that attempt to 'subvert' a confirmed plan." (internal citation omitted)  Seven Seas, 522 F.3d, at 589.

In Newby v. Enron Corp., the Fifth Circuit explained its holding in Craig's Stores:

13

Three factors were critical to its decision:  first,
the claims at issue "principally dealt with post-
confirmation relations between the parties;" second,
"[t]here was no antagonism or claim pending between the
parties as of the date of the reorganization;" and
third, "no facts or law deriving from the
reorganization or the plan [ were] necessary to the
claim."

\* \* \*

The Craig's Stores Court did hold that a bankruptcy
court may lack jurisdiction over post-confirmation
claims based on post-confirmation activities, but the
Craig's Stores Court did not hold that a bankruptcy
court may lose jurisdiction over pre-confirmation
claims based on preconfirmation activities, like those
in this case.

Newby v. Enron Corp., 535 F.3d, at 335.

In the instant case, the Debtors settled a dispute with
major creditors by transferring the causes of action they
believed they might have against the Debtors' directors,
officers, and shareholders to the creditors' trust.  The
recovery, if any, from the litigation is the primary source of
funds for payment of the claims of unsecured creditors.  The
causes of action asserted are based on prepetition activities.
The court concludes that bankruptcy jurisdiction remains for the
resolution of the claims brought in the instant adversary
proceeding.

The court next turns to the questions of whether to
permit amendment of the answers, and whether to grant leave to
demand a jury trial.

Under Rule 38(b), Fed. R. Civ. P., as made applicable

14

by Rule 9015(a), Fed. R. Bankr. P., a party may demand a jury trial on any issue triable of right by a jury, by serving the other parties with a written demand, no later than 14 days after the last pleading directed to the issue is served, and filing the demand.

Under Rule 38(d), Fed. R. Civ. P., as made applicable by Rule 9015(a), Fed. R. Bankr. P., a party waives a jury trial unless its demand is properly served and filed.

Under Rule 15(a)(2), Fed. R. Civ. P., as made applicable by Rule 7015, Fed. R. Bankr. P., a party may amend its pleading with the court's leave.  The court should freely give leave when justice so requires.

An amendment which introduces new theories of recovery based on the same operative facts does not revive a right to a jury trial.  In re Hunt, 215 B.R. 505 (Bankr. W.D. Tex. 1997) citing Guajardo v. Estelle, 580 F.2d 748 (5th Cir. 1973).[4]

In the instant adversary proceeding, Defendants' amended answers raise no new operative facts supporting the affirmative defenses pled.  The court concludes that Defendants have waived the right to a jury trial.  The court will, however, permit amendment of the answers.

---

[4]The rule stated in Guajardo v. Estelle and applied in In re Hunt addressed affirmative theories of recovery, but it applies equally to defensive theories.  See Westchester Day School v. Village of Mamaroneck, 504 F.3d 338 (2d Cir. 2007).

However, resolution of the questions as to waiver of jury trial and amendment of the answers in the instant adversary proceeding does not fully resolve the issues presented.  Under Rule 39(b), Fed. R. Civ. P., as made applicable by Rule 9015(a), Fed. R. Bankr. P., issues on which a jury trial is not properly demanded are to be tried by the court.  But the court may, on motion, order a jury trial on any issue for which a jury might have been demanded.

In <u>Daniel Int'l Corp. v. Fischbach & Moore, Inc.</u>, 916 F.2d 1061 (5th Cir. 1990), the Fifth Circuit adopted the following factors (set forth by the Eleventh Circuit in <u>Parrott v. Wilson</u>, 707 F.2d 1262 (11th Cir.), <u>cert. den.</u>, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983)) that courts should consider in the exercise of discretion under FRCP 39(b):

> (1) whether the case involves issues which are best tried to a jury;
> (2) whether granting the motion would result in a disruption of the court's schedule or that of an adverse party;
> (3) the degree of prejudice to the adverse party;
> (4) the length of the delay in having requested a jury trial; and
> (5) the reason for the movant's tardiness in requesting a jury trial.

Although the court has jurisdiction to determine the claims in the instant adversary proceeding, those claims are not core proceedings.  Plaintiff's claims do impact the distribution to creditors, but do not address the allowance or disallowance of

16

claims against the estate.  Plaintiff's claims in the instant
adversary proceeding for breach of fiduciary duty are claims in
equity, to which a right of a jury trial does not traditionally
attach.  See Chauffeurs, Teamsters and Helpers, Local No. 391 v.
Terry, 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990).  See
also Torch Liquidating Trust ex rel. Bridge Associates L.L.C. v.
Stockstill, 561 F.3d 377 (5th Cir. 2009).  The pleadings are not
persuasive as to any prejudice to Plaintiff or Defendants, or
disruption of any of the parties' schedules or the court's
schedule, particularly in light of the court's determination to
permit amendment of Defendants' answers.  A delay of three to
four months in requesting a jury trial does not weigh strongly
against allowing a jury trial, in light of the court's decision
to permit amendment of the answers.  The reason for Defendants'
tardiness, that they initially answered pro se, but subsequently
hired counsel, does not weigh in favor of allowing a jury trial.

        In considering each of these factors, this court finds
the most persuasive factor to be the absence of a right to a jury
trial in an equitable action for breach of fiduciary duty.  The
court concludes that Defendants should not be granted a
discretionary jury trial pursuant to Rule 39(b), Fed. R. Civ. P.,
as made applicable by Rule 9015(a), Fed. R. Bankr. P.

        In Holland America Ins. Co. v. Succession of Roy, 777
F.2d 992 (5th Cir. 1985), the Fifth Circuit articulated several

17

considerations by a district court in determining whether to withdraw the reference of a proceeding:  "The district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process."

At this stage of the reorganization, the instant adversary proceeding does not raise significant issues as to uniformity of administration, confusion, or expedited bankruptcy process.  There are issues regarding forum shopping, and the economical use of Debtors' and creditors' resources.  Most notably, Defendants do not consent to the entry of final orders by the bankruptcy court.  Thus, whether the instant matter is tried in the District Court or the Bankruptcy Court, it is clear that the District Court will ultimately be either making or reviewing the determinations of fact and law to be addressed in the instant adversary proceeding.  A trial in the Bankruptcy Court, followed by a review in the District Court, would add a layer of expense to the instant adversary proceeding for all parties.  Plaintiff's choice of forum does not outweigh this added expense.  This court concludes that the reference should be withdrawn, and will so recommend to the District Court.  In the interim, this court will schedule new dates.

Based on the foregoing, a separate conforming Judgment,

and a Report and Recommendation to the District Court for
Withdrawal of Reference will be entered.

        Signed at Houston, Texas on this _____15th_____
day of ____February____, 2011.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE